Kevin DuBrul and Roberta C. DuBrul v. Commissioner.
Du Brul v. Commissioner
Docket No. 786-69.
United States Tax Court
T.C. Memo 1970-124; 1970 Tax Ct. Memo LEXIS 236; 29 T.C.M. (CCH) 531; T.C.M. (RIA) 70124; May 25, 1970, Filed Kevin DuBrul, pro se, 1157 Bruce St., Cincinnati, Ohio, RudolfL. Jansen, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $492 and $578 in the petitioners' income tax for the calendar years 1966 and 1967, respectively. The only question remaining for decision is whether certain expenditures made by petitioner. Kevin DuBrul, for travel, meals, and lodging during those years were made while he was "away from home" so as to be deductible as "traveling expenses * * * while away from home" within section 162(a)(2) I.R.C. 1954. Findings of Fact The parties have stipulated certain facts, which, together with the *237 attached exhibits, are incorporated herein by this reference. Petitioners, Kevin and Roberta C. DuBrul, husband and wife, filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Cincinnati, Ohio. At the time the petition in this case was filed, petitioners resided in Cincinnati, Ohio. Petitioners were born and reared in Cincinnati, and have reared a family of four children there. Mr. DuBrul was employed in Cincinnati from 1936 until 1964. During that period he held several sales, industrial engineering, and accounting positions. In his last employment in Cincinnati he worked with accounting systems and procedures. Mr. DuBrul ("petitioner") was an alcoholic, and in December of 1964 he was fired from his position as an accountant, apparently as a result of his condition. At that time he was approximately 53 years of age. Following an unsuccessful attempt to locate employment in Cincinnati, petitioner went to Detroit, Michigan, in early 1965 to seek employment there. His inability to find work in Cincinnati was apparently due at least in part to the fact that he was known as an alcoholic there, and he thought *238 that he would be more likely to locate a job in Detroit, where he was not known. At this time Mrs. DuBrul and at least three of their four children held jobs in Cincinnati. As a result, petitioner decided that it would be uneconomical for the family to move to Detroit with him. Thus, from 1965 until the time of the trial herein, the petitioners maintained a family home in Cincinnati where Mrs. DuBrul and at least some of the children continued to reside. Mr. DuBrul moved to Detroit in February of 1965 and during the remainder of that year he worked for three different employers there. From January 1, 1966, to March 20 of that year he was again unemployed, and during this period he resided in his Cincinnati home with his family. After unsuccessfully looking for a job comparable to his previous employment, petitioner took a job on March 21, 1966, as a cab driver in Detroit. From that time until the end of 1968, he continued to work in Detroit as a cab driver as follows: Time Period
Employer
March 21, 1966 to October 10, 1966
Checker Cab Company, Detroit, Michigan
October 11, 1966 to October 10, 1968
Radio Cab Company, Detroit, Michigan
October 11, 1968 to December 31, 1968
Checker Cab Company, Detroit,Michigan
*239 In addition, during 1966, petitioner performed services for seven other employers in the Detroit area. The parties have stipulated that "[from] six of those employers, Mr. DuBrul earned less than $40 during the entire year, and with one additional employer he earned only $136 during the entire year." From January 1, 1969, until the time of the trial herein, he was employed by Omnibus, Inc., in Detroit. During 1966 and 1967 petitioner did not have an agreement of any kind with either the Checker Cab Company or the Radio Cab Company with regard to the duration of his employment, and neither employer offered to move his family or household belongings from Cincinnati to Detroit. Throughout the years in issue, petitioner's only efforts to locate employment in Cincinnati were confined to an occasional look at newspaper advertisements. Mr. DuBrul made expenditures of $2,901 and $3,242 in 1966 and 1967, respectively, for travel, meals, and lodging while in Detroit and while traveling between Detroit and Cincinnati. In their joint Federal income tax returns for 1966 and 1967, petitioners deducted $2,901 and $3,242, respectively, as travel, meal, and lodging expenses incurred by *240 petitioner while away from home. In his notice of deficiency the Commissioner disallowed the claimed deductions. 533 Opinion RAUM, Judge: Section 162(a)(2), I.R.C. 1954, [1] allows a deduction for traveling expenses incurred "while away from home in the pursuit of a trade or business." We have held that "home" in section 162(a)(2) means the taxpayer's principal place of employment. See e.g., Lloyd G. Jones 54 T.C. 734 (April 8, 1970); Rendell Owens 50 T.C. 577, 580; Ronald D. Kroll, 49 T.C. 557, 561-562; Floyd Garlock 34 T.C. 611, 614; Mort L. Bixler, 5 B.T.A. 1181, 1184; cf. Commissioner v. Stidger, 386 U.S. 287, 290-296. However, we have also held that where a taxpayer's employment is only "temporary", as distinguished from "indefinite" or "indeterminant", his place of work during that time is not necessarily his "home" for the purpose of section 162(a)(2). Compare Lloyd G. Jones, supra; Walter P. Stricker, 54 T.C. 355 (February 25, 1970); Floyd Garlock, 34 T.C. 611; James M. Eaves, 33 T.C. 938; Kermit L. Claunch, 29 T.C. 1047, *241 affirmed 264 F. 2d 309 (C.A. 5); with Emil J. Michaels, 53 T.C. 269; Alois Joseph Weidekamp, 29 T.C. 16, acq. 1958-2 C.B. 8; Harold R. Johnson, 17 T.C. 1261, acq. 1952-1 C.B. 2; E. G. Leach, 12 T.C. 20, acq. 1949-1 C.B. 3. See also Peurifoy v. Commissioner, 358 U.S. 59, 60. In 1966 and 1967, petitioner's principal place of employment was Detroit. By the beginning of 1966, he had given up hope of finding employment in Cincinnati during the foreseeable future. He had already worked in Detroit for nine months, and his principal job-hunting efforts were in that city. Further, his employment in Detroit was of indefinite *242 rather than temporary duration. He did not enter into an agreement with either Checker Cab or Radio Cab relating to the duration of his employment, and there is no evidence before us that during 1966 and 1967 he contemplated returning to work in Cincinnati at any time in the near future. We conclude that during 1966 and 1967, Mr. DuBrul's principal place of employment was Detroit, that his employment there was for an indefinite period of time, and that therefore he was not "away from home" while in Detroit. The claimed deductions are therefore denied. We are aware of the often tragic consequences of alcoholism - both for the alcoholic himself and for his family. We also realize, as argued by petitioner, that for the alcoholic, employment and establishment of economic independence are frequently essential to recovery. However, despite the seriousness of petitioner's situation, the law does not permit deduction of the expenses here in issue under section 162(a)(2). Decision will be entered for the respondent. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩