Lester E. Wood and Marie P. Wood v. Commissioner.
Wood v. Commissioner
Docket No. 66698.
United States Tax Court
T.C. Memo 1958-198; 1958 Tax Ct. Memo LEXIS 22; 17 T.C.M. (CCH) 976; T.C.M. (RIA) 58198; November 28, 1958
*22 Held, petitioners have not shown that respondent committed error in disallowing a part of the deduction claimed by petitioners under section 23(a)(1)(A) of the Internal Revenue Code of 1939 for traveling expenses while away from home in the pursuit of a trade or business. Eugene J. Brenner, Esq., 1105 Mills Tower, San Francisco, Calif., for the petitioners. Leslie T. Jones, Jr., Esq., and Aaron S. Resnik, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the taxable year ended December 31, 1953, in the amount of $304.86. Two errors were assigned, as follows: "(a) The Commissioner has erroneously disallowed any deduction for travel expenses of petitioners over the amount *23 of $824.00 although petitioner, Lester E. Wood, incurred travel expenses of $1,411.96 for which he was reimbursed and travel expenses of more than $2,000.00 for which he was not reimbursed. "(b) The Commissioner, in computing adjusted gross income, allowed only the sum of $824.00 as travel expense; he erroneously considered the petitioner, Lester E. Wood, as 'away from home' only 132 days during said taxable year, allowed only the sum of $6.00 per day as away from home expenses, and allowed only $32.00 as transportation expenses." Findings of Fact Some of the facts were stipulated and they are so found. Petitioners, husband and wife, filed a joint return on the cash receipts and disbursements basis for the calendar year 1953 with the district director of internal revenue for the first district of California, at San Francisco. Petitioner Lester E. Wood, hereinafter sometimes referred to as petitioner, is a line foreman on construction work for Pacific Gas & Electric Company, hereinafter sometimes referred to as PG & E. As a member of a "floating crew" with PG & E petitioner is required to go to whatever "job site" his employer sends him in Northern California to supervise *24 the construction of electrical installations. Petitioner has been so employed continuously since 1939 with the exception of 2-1/2 years from June 1943 to January 1946 when he was a member of the Seabees during World War II. Prior to his marriage to Marie P. Wood in 1940, petitioner lived with his mother, Ardyce Wood, in a home at 2221 Roosevelt Avenue, Berkeley, California, and from 1940 to June 1943 petitioners used this address as their permanent address. During the period petitioner was in the Armed Forces, petitioner's wife resided with her mother-in-law at this address. The home is owned by petitioner's mother. Petitioners have continuously since 1940 used 2221 Roosevelt Avenue as their mailing and voting address. They voted in Berkeley whenever possible and since 1940 have never been registered to vote elsewhere. Petitioner's mother was a widow. Petitioner contributed to the upkeep of the house, including payment of real property taxes and utilities. When petitioner was in Berkeley on week ends, he purchased food and left food in the refrigerator and freezer while away. Petitioners had a bedroom which was considered their own, although they had the use of the entire house *25 for all purposes, including the entertaining of friends. They owned all the furniture in their bedroom and they had also purchased living room and kitchen furniture and utensils for the house. No accounting of contributions to the cost of running the house was kept. During 1953 petitioner's wife remained in the Berkeley home for about a month while she was recuperating from a back injury. During 1953 petitioner, as a supervisory employee, was reimbursed by PG & E at the rate of $4 per day to cover his board and lodging expense for 350 days, during which time PG & E considered petitioner to be outside of his "residence area." PG & E considered petitioner's residence area to be the contiguous areas of Alameda County, consisting of Berkeley, Emeryville, Piedmont, Oakland, and Alameda. During 1953 petitioner's location or job site was in San Rafael, California, from January 1 to about July 15; in Lakeport, California, from about July 15 to about September 2; in San Rafael from about September 2 to about October 2; and in Lakeport from about October 2 for the remainder of the year. In traveling between Berkeley and San Rafael one had to use a ferry. The distance between the two places *26 was about 17 miles. The distance between Berkeley and Lakeport was between 100 and 125 miles. During 1953 petitioners resided in a house trailer which they moved from job site to job site. The cost of the trailer was about $5,500. The previously mentioned reimbursement of $1,400 (350 days at $4 per day) accounted for the entire year 1953 except for a vacation period of about 2 weeks during which time petitioner was not paid an expense allowance. In addition to the $1,400, PG & E during 1953 reimbursed petitioner to the extent of $11.96 for bus fare. In the moves between San Rafael and Lakeport, petitioner would first move the company car to the new location and then return by bus to pick up his own personal gear. When petitioner was sent to a job site, he was informed of the approximate length of time he would be at that job site. On occasion he knew several jobs in advance where his job sites would be and approximately how long he would be required to be there. Petitioner never had any choice as to where he was to be assigned on a specific job. If he had refused to go, PG & E would have treated his refusal as a resignation. Employees in a floating crew were sent where work existed, *27 and PG & E chose the most available crew for the job. The crew was sent for the exigencies of the business of the employer. In their tax return for the year 1953, petitioners reported as a miscellaneous itemized deduction travel expenses in the gross amount of $2,554.72 from which was subtracted the reimbursement of $1,411.96, leaving a net deduction of $1,142.76. In a statement attached to the deficiency notice, the respondent added the reimbursement of $1,411.96 to petitioner's income and disallowed the claimed deduction of $1,142.76. After making these two adjustments, the respondent allowed petitioners a deduction of $824 for travel expense which he explained in the statement as follows: "(e) Based on available information, it has been determined that you were in a travel status 'away from home' while employed at Lakeport, California, for a period of 132 days during the year. Travel expense has therefore been allowed in computing adjusted gross income in the amount of $824.00, as follows: "132 days at the rate of $6.00
per day
$792.00
"Transportation to and from
Lakeport, California, (2 trips,
400 miles at the rate of 8 cents
per mile)
32.00
"Total
$824.00"
*28 During 1953 petitioner's home was in San Rafael, California. Opinion This proceeding involves the oft recurring question of the deductibility of traveling expenses while away from home. The applicable statutory provisions are in the margin. [1] The applicable regulations are Regulations 118, section 39.23(a)-2. [2] They are deemed to possess implied legislative approval and to have the effect of law. Commissioner v. Flowers, 326 U.S. 465. *29 At the outset it may be noted that petitioners in their reply brief concede that the reimbursements of $1,411.96 constituted income. They contend, however, that during 1953 their home was at 2221 Rooseveltavenue, Berkeley, California; that petitioner was away from home in the pursuit of his trade for 300 days; that during this absence petitioner expended at least $2,235 (300 X $7.45) for food and lodging and $571.93 for automobile expense; and that petitioners are, therefore, entitled to a deduction for traveling expenses under section 23(a)(1)(A) of the 1939 Code of the total amount of $2,806.93 ($2,235 plus $571.93). Respondent, in the determination of the deficiency, has conceded in principle that petitioner was "in a travel status 'away from home' while employed at Lakeport, California, for a period of 132 days during the year." We are not asked to disturb this part of the respondent's determination except insofar as the evidence may show that while in this travel status petitioner expended more than the $824 allowed by the respondent. We will take up this phase of the question later in our opinion. Of course, petitioner contends that he was also in a "travel status" away *30 from home while employed at San Rafael. We think this contention must be denied. In Raymond E. Kershner, 14 T.C. 168, we said: "For the purposes of the statute, a taxpayer's home means his place of business, employment, or post or station at which he is employed. Commissioner v. Flowers, 326 U.S. 465; Moses Mitnick, 13 T.C. 1; Walter M. Priddy, 43 B.T.A. 18; Mort L. Bixler, 5 B.T.A. 1181. * * *" Certainly petitioner's principal place of business, employment, or post or station at which he was employed during 1953 was at San Rafael. During this time he and his wife lived in San Rafael. In our findings we have found as an ultimate fact that during 1953 petitioner's home was in San Rafael. We think the situation here is quite similar to the situation in Wilson John Fisher, 23 T.C. 218, affirmed by C.A. 7 at 230 Fed. (2d) 79. That case involved a professional musician, a native of Milwaukee, Wisconsin, who performed in hotel dining rooms and cocktail lounges throughout the country. His family lived and had their place of abode wherever petitioner happened to be working. Fisher paid part of the *31 telephone bill at his mother-in-law's apartment in Milwaukee and maintained a mailing and voting address in Milwaukee. We held that Fisher, while away from Milwaukee, was not away from "home" and in affirming our decision, the 7th Circuit, among other things, said: "We think the Court correctly found, on the evidence contained in this record and the material portions of which follow, that taxpayer's home and place of business coincided for the periods in question:" We hold, therefore, that petitioners were not entitled to any deduction for traveling expenses while away from home during petitioner's stay at San Rafael. Regarding petitioner's Lakeport expenditures, we think the evidence fails to show that petitioner spent more than the $824 allowed by the respondent. Petitioner had no record of such expenditures. His evidence consisted mainly of his own testimony of estimated costs. We hold that petitioner has failed to show that his expenditures at Lakeport were more than the $824 allowed by the respondent. The recent per curiam decision by the Supreme Court in Peurifoy v. Commissioner, - U.S. - (Nov. 10, 1958), affirming C.A. 4, 254 Fed. (2d) 483, which had reversed *32 27 T.C. 149, in no way aids petitioners. Decision will be entered for the respondent. Footnotes
1. Internal Revenue Code of 1939: SEC. 22. GROSS INCOME. * * *
(n) Definition of "Adjusted Gross Income." - As used in this chapter the term "adjusted gross income" means the gross income minus - * * *
(2) Expenses of travel and lodging in connection with employment. - The deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employe,: SEC. 23. DEDUCTION FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses * * * ↩
2. Regulations 118: § 39.23(a)-2. Traveling expenses. (a) Traveling expenses, as ordinarily understood, include railroad fares and meals and lodging. * * *
(d) If an individual receives a salary and also an allowance for meals and lodging, as, for example, a per diem allowance in lieu of subsistence, the amount of the allowance should be included in gross income and the cost of such meals and lodging may be deducted therefrom.↩